J-S82018-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION OF T.T.H., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.S.S., MOTHER | No. 1130 MDA 2016 |

Appeal from the Decree June 14, 2016,
in the Court of Common Pleas of York County,
Orphans' Court, at No(s): 2016-0020a

| | |
|---|---|
| IN THE INTEREST OF T.T.H., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.S.S., MOTHER | No. 1133 MDA 2016 |

Appeal from the Order entered June 14, 2016,
in the Court of Common Pleas of York County,
Juvenile Division at No(s): CP-67-DP-0000154-2014.

BEFORE: OTT, DUBOW, PLATT, JJ.

MEMORANDUM BY DUBOW, J.:                    **FILED DECEMBER 09, 2016**

Appellant, S.S.S. ("Mother") appeals from the Decree involuntarily

terminating her parental rights to her son, T.T.H. ("Child"), pursuant to the

Adoption Act, 23 Pa.C.S. § 2511(a) and (b), and from the Order changing the permanency goal from reunification to adoption.[1] We affirm.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

Counsel stipulated to the majority of the pertinent facts. Child was born in September 2011. At the time Mother and T.B.H., the putative father ("Father"), were not wed, but have since married.[2] On July 24, 2014, the York County Office of Children, Youth and Families ("the Agency") filed an application for emergency protective custody following Mother's arrest for, *inter alia*, attempted murder, robbery, and conspiracy. In an order entered the next day, the Agency presented sufficient evidence to demonstrate that continuation or return of Child to either parent was not in Child's best interest. The trial court reached the same conclusion in a shelter care Order dated August 4, 2014, and awarded legal and physical custody of Child to the Agency. The Agency placed Child in emergency foster care.

On August 6, 2014, the Agency filed a dependency petition, and the court adjudicated Child dependent on August 11, 2014. The court once again awarded legal and physical custody to the Agency for placement of Child in foster care, with a goal of reunification.

---

[1] This Court *sua sponte* consolidated Mother's Appeals.

[2] The Orphans' Court also terminated Father's parental rights. The Agency avers that he has not filed an appeal. Agency's Brief at 6.

Over the ensuing year and a half, the Agency provided Mother with Family Services Plans ("FSP"). In each subsequent permanency review Order, the court concluded that Mother had minimally complied with the FSPs, despite the reasonable efforts made by the Agency, although she did complete a parenting program offered at the York County Prison.[3] As a result of her incarceration and Father's minimal compliance with his FSP, there was a continued need to place Child outside the care of his parents.

On March 8, 2016, the Agency filed a Petition for the Involuntary Termination of Mother's Parental Rights ("TPR petition"), pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8), and (b). That same date, the Agency filed a petition to change the court-ordered goal in the dependency proceeding to adoption.

On April 29, 2016, Mother pled guilty to attempted robbery and conspiracy to commit robbery. The court sentenced her to a term of thirty to sixty months' incarceration in a state correctional facility.

_____

[3] We note that the Agency caseworker testified at the termination hearing that since August 2015, Mother had had bi-weekly, half-hour, contact visits with Child, and spoke with Child on the phone two to three times per month when she would call Father's cell phone during Father's supervised visits with Child. The case manager also testified that although the visits between Mother and Child went well, Child's bond with his foster parents is stronger than the bond with Mother. *See* N.T. Hearing, 5/19/16, at 83. The CYS case manager acknowledged that prison regulations barred Mother from having visits with Child for the first year of her incarceration due to the homicide charge pending against Mother.

On May 27, 2016, the Orphans' Court held an evidentiary hearing on both Agency Petitions. The Agency presented the testimony of one of its caseworkers, as well as Child's therapist, and a family resources specialist. Mother declined the opportunity to testify on her own behalf. The Agency stated that it had identified a prospective adoptive family.

At the conclusion of the hearing, the Orphans' Court took the matter under advisement. By final decree entered June 14, 2016, the Orphans' Court terminated Mother's parental rights based upon Section 2511(a)(1), (2), (5), and (8), and (b). By order entered that same day, the court changed the permanency goal to adoption.

These consolidated appeals by Mother follow.

## ISSUES ON APPEAL

Mother raises the following issues on appeal:

1. Whether the [Orphans'] court abused its discretion in terminating parental rights under 23 Pa.C.S. 2511(a)(1)[,] (2)[,] (5)[,] and (8) in that Mother was incarcerated and performed parental duties to the best of her ability given her incarceration including contact visits, telephone contact, and sending cards and letters to her son and the [Orphans'] Court erred in finding that termination of the parental rights would best serve the needs and welfare of [Child] due to [Child] having a bond with Mother and a bond with siblings.

2. Whether the [Orphans'] court abused its discretion in changing the court ordered goal in that the change of goal is not in [Child's] best interest due to his bond with Mother and his potential for loss of contact with siblings and the trial court erred in finding that Mother has provided no parental duties in that Mother was incarcerated and performed parental duties to the best

of her ability given her incarceration including contact visits, telephone contact, and sending cards and letters to [Child].

Mother's Brief at 4 (excess capitalization omitted).

Because evidence regarding the permanency plan goal change and TPR petitions substantially overlap, and the legal standards to be applied are the same, we will first address Mother's termination issues. *See In the Interest of R.J.T.*, 9 A.3d 1179, 1191 n.14 (noting that courts should combine hearings on these two petitions since the evidence substantially overlaps and allows for faster permanency for the child).

**LEGAL ANALYSIS**

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* We may reverse a decision based on an abuse of discretion only upon demonstration of "manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* We may not reverse, however, merely because the record would support a different result." *Id.* at 827.

We give great deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). The Orphans' Court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility

- 5 -

determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citations omitted).

It is well-settled that "a parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, health, safe environment." *In re. B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004). "Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs." *Id.* at 855 (citation omitted).

Section 2511 of the Adoption Act provides grounds for the involuntary termination of parental rights. *See* 23 Pa.C.S. §§ 2511(a). In order to affirm the termination of parental rights, this Court need only agree with the trial court's conclusion pertaining to any one subsection under Section 2511(a). *See In re B.L.W.* 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

**Termination Pursuant to Section 2511(a)(2), (5), and (b)**

Here, the trial court terminated Mother's parental rights under Section 2511(a)(1), (2), (5), (8) and (b).  We will analyze the trial court's decision to terminate Mother's parental rights under Section 2511(a)(2), (5), and (b), which provide:

> **(a)  General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> * * *
>
> (5) The child has been removed from the care of the parent by the court … for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.
>
> * * *
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be

beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

This Court has stated:

In order to terminate parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (internal citations omitted).

Our Supreme Court has observed that the Section 2511(a)(2) grounds for termination must be demonstrated by clear and convincing evidence. In addition, the Court noted:

A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

*In re Adoption of S.P.*, 47 A.3d 817, 827 (Pa. 2012) (internal citations and some internal quotation marks omitted).

With respect to incarceration, our Supreme Court has held:

> [I]ncarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2). **See e.g. Adoption of J.J.,** 515 A.2d [883, 891 (Pa. 1986)] ("[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); **[In re;] E.A.P.,** 944 A.2d [79,] 85 [(Pa. Super. 2008] (holding termination under § 2511(a)(2) supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs). If a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in the best interests of the child, considering the developmental, physical, and emotional needs and welfare of the child pursuant to § 2511(b). In this regard, trial courts must carefully review the individual circumstances for every child to determine, *inter alia,* how a parent's incarceration will factor into an assessment of the child's best interest.

**Id**. at 830-31.

In the instant case, the Orphans' Court observed that Mother has been incarcerated since July 2014 when the Child was adjudicated dependent, and recently received a sentence for thirty to sixty months' incarceration.

> Mother has provided no parental duties for the minor child for the past two (2) years and will not be able to so until she is released from prison.
>
> * * *
>
> Overall, Mother has made no progress … towards alleviating the circumstances which caused the minor child to be placed and [has] not assumed any major parental duties for minor child.
>
> * * *
>
> Neither parent is in a position to obtain custody of the minor child at this time. The minor child is currently residing with a

- 9 -

foster family and testimony established that the child is comfortable in their home. Minor child has a bond with the foster family and looks to them for comfort and security.

The [c]ourt finds that the conditions which led the minor child to placement outside the care and custody of Mother … continue to exist. Mother has been incarcerated since the adjudication of dependency and has made no progress towards alleviating the circumstances which initially led to minor child's placement.

…[T]he [c]ourt finds that the Agency clearly and convincingly established that termination of parental rights is justified pursuant to Sections 2511(a)(2), (5), and (8) of the Adoption Act.

Adjudication, dated 6/14/16, at 9-13.

Mother argues that the Orphans' Court erred in terminating her parental rights pursuant to Section 2511(a)(2) and (5) because "mother was the primary care giver prior to her incarceration," and "has time served and will not be incarcerated in state prison long before she is released." Appellant's Brief at 14-15.[4] She also avers that "Mother believes that since she has been sentenced, she now has a good idea of how long she will be incarcerated and feels it is reasonable to wait to save the mother[/]son bond." *Id*. at 15.

Since the dependency adjudication hearing in July 2014, when child was just two years old, up to the day of the involuntary termination hearing in May 2016, Mother has been incarcerated. Her ability to see Child twice a

_____

[4] Mother does not provide any details to support her averment that she will not be "in state prison long." The record is devoid of any indication as to Mother's potential release date in consideration of credit for time served.

month does not provide Mother with the capability of providing essential parental care, control or subsistence.  Without evidence of when Mother will be released, it is speculative for her to assert that the trial court erred in involuntarily terminating her rights because her prison sentence will not be long.  She received her sentence of thirty to sixty months' incarceration just weeks before the parental rights termination hearing, after Child had already lived half his life away from Mother.  Unfortunately, the "conditions which led to the removal . . . of the child continue to exist," Mother "cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time[,] and termination of [Mother's] parental rights would best serve the needs and welfare of the child."  23 Pa.C.S. § 2511(a)(2) and (5).

Most importantly, as noted above, "parental rights are not preserved by waiting for a more suitable . . . time to perform one's parental responsibilities while others provide the child with her physical and emotional needs."  *In re. B., N.M.*, 856 A.2d at 855.

Accordingly, the court did not abuse its discretion in terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2) and (5).

**Termination Pursuant to Section 2511(b)**

We also agree with the Orphans' Court's determination that the Agency met its burden under 23 Pa.C.S. § 2511(b), and that terminating Mother's parental rights is in the best interest of Child.

With respect to Section 2511(b), our analysis shifts focus from parental actions in fulfilling parental duties to the effect that terminating the parental bond will have on the child. Section 2511(b) "focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." *In re:   Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

In *In re C.M.S.*, 884 A.2d 1284 (Pa. Super. 2005), this Court found that "intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id*. at 1287 (citation omitted). In addition, the Orphans' Court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.* (citation omitted).

In the instant case, the Orphans' Court found that Mother's bond with Child has diminished due to her incarceration and, accordingly, the court found that termination of her parental rights would not have a negative impact on Child. The court further found that a healthy bond existed between Child and the foster parents:

> The Court has thoroughly evaluated [Child's] relationships in this matter.  . . .  The Court finds that [Child] had a bond with Mother but that bond has diminished since

> Mother's incarceration. It is the foster parents who provide for [Child]'s daily needs and act as [his] parental figures. [Child] looks to the foster family for security and is upset when he has to leave their care. At this point, the Court believes that termination of Mother's . . . parental rights will have no negative impact of [Child]. The Court also finds that the bond between the foster parents is strong and healthy. Testimony established that [Child] is happy in their care. The bond that [Child] has with the foster parents can provide safety, security and permanency for [Child]. Termination of parental rights will best meet the needs of [Child] and permit [him] to achieve the stability that he deserves.

Adjudication, at 14-15.

Mother argues that the Orphans' Court erred in concluding that termination of her parental rights would best serve the needs and welfare of Child because "[Child] has a bond with [Mother] and a bond with siblings." Mother's Brief at 10. According to Mother, she still possesses her parental rights to Child's older sister and, by severing her parental rights to Child, the Orphans' Court "has also effectively terminated rights to the older siblings, which [Mother] feels is an abuse of discretion and does not serve the needs and welfare of [Child]." *Id.* at 18.

Based on the testimony of the Agency's witnesses, the Orphans' Court acknowledged a bond between Mother and Child, but found that the bond had "diminished over time due to her incarceration preventing frequent visitation." Trial Court Opinion, dated 8/3/16, at 1. The Orphans' Court also reiterated its conclusion that Child "has a closer bond with the foster parents and would go to [them] over Mother when seeking comfort and care." *Id.* Finally, our review of the record supports the court's further conclusion that

testimony at the TPR hearing "established that [Child] has regular contact with his siblings and extended family members and that the foster parents intend to continue said contact." *Id.* Thus, Mother's claim regarding Child's potential loss of a bond with his siblings fails.

Finally, with respect to the trial court's decision to change Child permanency goal to adoption, we note that when considering a goal change Motion the court looks to the best interests of the child rather than those of the child's parents. *See R.J.T.*, 9 A.3d at 1183-84. The Agency must establish that the requested goal change option is best suited to the child's safety, protection, and physical, mental, and emotional welfare. *Id*.

In light of our above analysis, we conclude that the Orphans' Court did not err in changing Child's permanency goal to adoption.

**CONCLUSION**

In sum, our review of the record supports the Orphans' Court's determination that the Agency met its statutory burden of proving by clear and convincing evidence that Mother's parental rights should be terminated pursuant to 23 Pa.C.S. §§ 2511(a)(1) and 2511(b), and did not err in changing the permanency goal to adoption.

Decree affirmed.  Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/9/2016